Good morning. Good morning. May it please the Court, Jennifer Levin Eichhorn on behalf of the United States. All right. You have five minutes, but we'll, if we have more questions, now, my understanding is that you have asked to be heard on the issue that the District Court, the District Court's finding in terms of that, regarding the statute, and you're asking, saying that the Department of Education has, because it's ambiguous, has made certain interpretations, and you're entitled to deference of a sort. Is that correct? That's correct. There are three issues with that we're here to address. The first is that the Department of Education's interpretation that a child's impairment can fall within more than one category of disability is appropriate and consistent with the statute in a way to assess potential eligibility. The second point is that the regulatory definition of other health impairment includes a list of possible conditions and is not exhaustive. And third, that auditory processing disorder, depending on the extent of the condition that a child has, can qualify as an auditory processing disorder. So going back to the first point. But you're saying that now, that wasn't, you've spoken to ADD previously, but it wasn't, you really didn't speak to auditory processing previously, did you? That's correct. We have not. But this Court has recognized, and the Supreme Court has recognized, that positions presented by the United States in amicus briefs can be considered, even when it's raised for the first time in amicus, when the Court is assessing and giving deference to those views in terms of interpreting statutes and regulations. And we're asking for that here. Because the statute, and because the regulations are ambiguous, we're saying that the District Court was wrong in saying that if auditory processing disorder is considered a serious learning disability, it can't possibly also be another health impairment. Okay. Now, special learning disability has to be a severe discrepancy due to disorder or basic psychological process and cannot be otherwise ameliorated. Other health impairment is, has to be limited strength, vitality, or alertness due to chronic acute health problems adversely affects child's educational performance, right? So they're a little bit different. The language is different, but it doesn't mean something can't fall within one limit. That it can be both. It can be both. But it could be one or the other as well. That's true. Not every learning disability is going to meet the criteria for other health impairment, for sure. But your problem is the District Court said that it can't be both. That's correct. And it said it can't be both and didn't assess whether or not auditory processing disorder can be, can meet the criteria of other health impairment. I'd also point out that the definitions that you're reading are those that were in effect in 2005, and the severe discrepancy requirement is no longer in place. But I understand for purposes of this, you need to address that. But counsel, what would we do with the scenario, if we were to agree with your argument as a matter of law, but took the view that the record, as it now exists, would not support the other health impairment category, what would we do in that scenario from your point of view? Would we, do you think it would be appropriate to make that legal determination, even though the record would not support the proposition that the school district somehow acted unreasonably back in 2005 in not making that determination? We're not addressing whether or not – I'm sorry. I'm frankly not sure I understand your question. Now, if you're not supporting the plaintiff's position on what happened back then, you are saying that the district judge was wrong on the statute. Right. What the judge is asking you here is if we, all right, can we then look back at what the record was back in, what, 2004 or whatever, and say, hey, that record there is not sufficient to establish an other health impairment? That may be. We haven't weighed in on whether or not this child meets the standards. Right. That we frequently participate as amicus to address the legal questions without addressing the specific other health issues. So you would want us, if we were to agree with you on the law, you would want us just to remand on that basis alone for the – I thought you were asking that. Say that again? I thought you, I thought you did take that position. We did ask for remand. I believe that there are instances when this Court has resolved idea questions when it's had not. But what if looking, okay, it's going to be really hard to go back and recreate that, you know, that the school district was in a position to evaluate what it had at the time. All right. So if we remanded it and essentially said, okay, now determine, now that we've told you, you were wrong, you were wrong under saying it couldn't be an OHI as well. Right. How do you recreate, you know, how – so then do they get to add now and put it back in the 2004? In terms of making the assessment, it's – the Court or the school district can look at the evidence that it had with respect to what was the child's problems, what were his needs, and how are they being addressed, and use that same evidence to evaluate whether or not he fits the category of SLD or if he fits the category of other health impairment. This – having this consideration of more than one category isn't going to be particularly burdensome or costly or time-consuming for a school district in Because when you're making an assessment under child find, and you are looking at what are the child's problems, what are his needs, and what's being provided in the classroom – Okay, I think we know all that, but we'll work – okay, let's assume that we agree with you on the – let's just assume that for this purpose. But if we remanded, it wouldn't be mutually exclusive to say that the school district did not abuse its discretion back on what they had at that particular time, correct? Right. One doesn't follow the other. Just our agreeing with you on the statute doesn't necessarily mean that the plaintiff wins back on that hearing back then. That's correct. It might be that this child's condition hasn't manifested in a degree to which his – the extent to which he has auditory processing disorder meets the other health impairment category. So it's possible – my understanding is eventually they find that – they find he eventually got services, and now he's over 18. But my understanding of disabilities is you probably always have them, but at the point that you're entitled to services, it's a moving – a child might be okay in first, second, and third grade. But suddenly in fourth grade, whatever their OHI or their SLD, then either causes a discrepancy or it's causing the other requirements of the OHI. But it's possible that it didn't manifest itself earlier, right? It's possible. I mean, is the school district – do they have to – is this child finding, if you ever found it later, they were wrong that they didn't find it sooner? Does one necessarily follow? I don't think there's a categorical answer for that. I think in most instances, a child is going to – that has a disability that's identified later likely had it earlier. But does that mean that the school district violated child find at a particular point if the evidence was not there? If the evidence was not there, we're not going to say that the school – and we haven't addressed that. Yeah. My – you're here with respect to the interpretation of the statute. Yes. Is that correct? And we appreciate your being here. The district court said, without having the benefit of your views, said that other health impairments seem to refer to different kinds of conditions, and that Congress couldn't have intended the same condition to be evaluated under two different standards. Now, what is wrong with that? That – a few things, Your Honor. First is, the court narrowly interpreted health conditions to simply mean traditional physical medical problems like epilepsy, leukemia. The regulations had been amended by the time of this case to include ADD and ADHD, which, because of the hypersensitivity to stimuli that was added, that was – falls within the category of health problems. And in 2006, the Department added Tourette syndrome as another condition that falls within other health impairment. So the phrase, chronic or acute health problems, goes beyond simply medical. And, again, this list is not exhaustive. Right. And the Department has determined that that is so. That goes to part of it. But what about the – And why it can't be both? Why would you have these two different standards? I think that there are a handful of conditions which manifest itself in a wide variety of ways. So it is possible, for example, with ADD, that a child may have the limited alertness, which would fall within OHI. But nothing stops it from being considered part of specific learning disability. That it's – the Department has said it can fall within specific learning disability. It could even fall within emotional disturbance. Chronic fatigue syndrome is another type of condition which can manifest itself in a variety of ways. Auditory processing disorder can manifest in a variety of ways. And the goal of ChildFIND is to identify whether or not that condition meets the criteria and the child needs special education. And I'd also add that the use of the term or doesn't mean mutually exclusive and categorically separate. Counsel, doesn't your – excuse me – your position arguably greatly adds to the burden of local school districts that are trying to comply with this already very complicated law? I mean, they have to have a sense of what the claim of disability is, what's the nature of the disability, in order to establish that from their perspective, they're providing the adequate services. If in fact any number of these categories could be applicable in any given situation, that makes it much more difficult for the districts to do their job and make their case that they're doing their job. This is not going to happen in a large number of cases. Frankly, there's only a handful of conditions, and we've only come up with three so far, which can fall within more than one category. And again, a school is going to make its assessment under ChildFIND by looking at the child's needs. Once it's identified what the child needs and what his problems are, it's just a matter of looking at the categories and saying, okay, does it meet the criteria of learning disability by being some kind of psychological disorder? And if not, you're using that same information to look at whether or not it might fall within other health impairment. There are not going to be a lot of children who are going to require this more than one. And frankly, by the time they modify the definition of significant specific learning disability to eliminate the severe discrepancy requirement, there would not have been the two category assessment needed. Well, essentially, it's another arrow in the quiver to help a child that's clearly struggling but might only have a 20-point discrepancy, but they're clearly struggling and they meet the criteria of the OHI. Right? Right. But you're saying there's not too many. The comorbidity isn't going to be great. Exactly. It's not going to be a large fraction of children. It's not going to open the floodgates of children who need special education. But it is going to help identify those who do appropriately fall within the category. Are you saying that the severe requirement is not there anymore? That's correct. So that this is a – when was that change made? I believe in 2006. It might have been later. I'm frankly not sure. All right. But obviously, the district courts are struggling with this. And so even though you think you may have been clear, it probably hasn't been that clear to everyone. So what you're saying is you would like Chevron deference and you would like us to say what you're saying so that the district courts don't keep getting it wrong? Am I summing that up for you? That would work, Your Honor. Okay. Any other questions? Okay. All right. The appellant now has 15 minutes, and that includes your rebuttal time, too. Good morning, Your Honors. Do you want to reserve any time for rebuttal? If I could reserve three minutes for rebuttal. Okay. And your name is? Mandy Lee, and I represent EM, and I have represented him since 2004. A question that was raised was, what information did the school have about EM at the time that would have qualified him for specific learning disability or under the category of other health impaired? In our briefs, we outline numerous pages from the transcript that identified a child who was in a daze as reported by his teachers in class for two grade years, fourth and fifth grade, that he was performing below grade standards, that he had listening comprehension issues, that he was not paying attention, and that he was only being passed from grade to grade by virtue of a waiver. This is not information that was absent to the school district. They had this, and they documented it in their assessment in 2004. Let's cut to the chase. Let's assume, let's say if we agree that the Department of Education is entitled to Chevron deference, then they said they really, they're not here for you to win, right? They're here to say what they think the statute says and their interpretation of it for school districts. So they did request, I think, a remand, as my colleague said initially. But if we remand it, is it on the record that was before the ALJ and the court back then? Or are you planning to try to augment it with the fact of he was subsequently diagnosed and this is where he is right now? That wouldn't tell us where he was back then, right? Because for the school district to be found to have not followed the child find, wouldn't it have to be based on what was in front of them back then? Well, child find is one issue. Whether they failed to identify... We have the WIS thing, but let me, on the OHI. Eligibility is what you're talking about. Yes. Well, if... Can't we just, can we just look at it and decide whether it's there or not? Absolutely, and the court did. The court found that EM performed poorly in school at 652 F3rd 999. The court found that in the 3rd and 4th grades, he struggled. His teachers identified attention and homework completion as problem areas. The court also found that interventions... Okay, but, all right, but... Under OHI, you have to show, there has to be evidence of more than that. And, um, so... Limited vitality and alertness. But are you saying you're not going to... You would just go by what was presented back then? You're not going to, you're not augmenting it with anything? I believe that the augmentation of the 2007 Jacques report and the 2008 report that the school district finding him eligible... But how does... But that wasn't before them at that time. So how can they have done something wrong by something that happens later? Don't you have to do it based on back then? Well, we believe they did do something wrong. They discounted valid scores that met 20 U.S.C. 1414. Okay, but that's on... Okay, but that's not the OHI. That's the separate argument. Right. So under OHI, at the time, the definition is unchanged. Limited vitality and alertness that was caused by a chronic or acute health condition. And that, the most important piece is that those, that limited vitality and alertness affected educational performance. Well, this Court, in its order, already determined that there was an affect on educational performance by saying that he failed for two years. And, and the Court also had information that he was in a daze as reported by his teachers. The Court also found... What was in the record, what was in the record back then of the auditory processing? That Dr. Ruth Casper diagnosed E.M. with an auditory processing disorder and that his disorder was so severe that she had to stop testing in order to... What year was that? I'm sorry? What year was that? That was in 2004 and it was admitted as part of the due process hearing. And that's when the district admitted evidence from Jody Winzelberg, an audiologist who never met E.M., who couldn't rule out that he had an auditory processing disorder. So at any time during the due process hearing, the school district could have said, you know what, he does have an auditory processing, but there's one more piece of information, Your Honor. When the Kauffman was given and when Ros Wright report in 2004, right when the IEPs were happening, which I was in attendance at, the Ros Wright report said he should be referred because he has audiological problems. In addition, if you did the discrepancy analysis on the Kauffman which was administered by Leslie Vial, she found auditory weaknesses and she also found a discrepancy significant which was also found later in the Jock's report so it was corroborated. In listening comprehension. So it's not like the district went blindly in 2004 and all of a sudden this was a shocker to them. They had a child who was struggling in school, a child who couldn't pass from grade to grade and they had a discrepancy in listening comprehension on a valid assessment. But counsel, isn't it a fact that although the possibility that EM might have qualified under this OHI category, I mean, the focus before the ALJ and the district court was this special learning disability category. I mean, that was the focus of the debate and it seems that it's later in the long history of the case that this OHI category has become increasingly important.    of a bit of an imposition on what was being done initially and there may be some unfairness to say that this OHI category has become increasingly important and there may be some unfairness to the district in now sort of imposing this retrospective view on what was going on. I mean, OHI was not the focus of the debate in the early stages of this case. Isn't that true? That is not true and that is not what the Ninth Circuit this Court found previously. Right. It wasn't waived. The Ninth Circuit said you could raise it but they didn't say it was the focus of the prior so that is not you're not it's law of the case that it was fully waived that they could discuss it on the appeal but it isn't law of the case that it was fully waived. Sure. I'm happy to give you the two citations that I raised for Judge Noonan, Paez and Bea which form the crux of the remand on the issue of OHI. If you look at Well, what was law of the case? Law of the case is that you were able to argue it on appeal that you had said enough to argue it on appeal and we did say but not that the record was sufficient to find OHI. Actually, what the court found was that Judge Fogel and the ALJ did not address the issue of OHI not that it wasn't raised. We absolutely argued it. It was defined for Judge Fogel we went into great detail about the attack on appeal was it raised enough for the appellate court to address it. That's what's law of the case. They said you raised it enough for you to talk about it on appeal. They didn't say that the record was sufficient. The defendants below in from the due process complaint I can even go back further to the IEP all the way up through today have extensively raised  of OHI and the defendants have put on ample evidence they hired an expert who never even met EM to opine as to whether he's auditory processing disorder qualified him at all under any category. Would you concede that there can be that just because a person is diagnosed later under SLD or OHI doesn't necessarily mean in the past that the school district didn't do what they had to do or is it always your position if it turns up later they must have been wrong before when they didn't get it? That's not what I ask you. You don't get to answer what you want to answer. I do not believe that that is always the case. We provided a case called GD. The district knew that he may have had a disabling condition. In this case he had chronic ear infections since preschool and the district knew that. He had a severe head injury. The district knew that. All of those things are likely what caused the neuro biological condition of the auditory processing disorder. I would also say under the facts of this case the discrepancy with the learning comprehension which is an issue that we've cited and provided a lot of information about how central auditory processing can affect a person's ability to listen has never changed. The discrepancy existed and I know I'm not confusing the issue of specific learning disability but the testing that was done drew out this issue of listening. That discrepancy not only existed when Leslie Vile did her test in 2004 and when Ros found a discrepancy in listening which is why she referred the school district  should have him referred out. It was also borne out by Dr. Casper's report and Dr. Jacques's report. She found a discrepancy using the WISC-IV which is a different version of the test. If we were to find the use of the WISC score was reasonable how can you prevail on that part of it? A very straightforward answer to that. There are two or three parts to that. Number one is if the court below had read Dr. Wright's report it said my scores are unreliable because during the test administration he was not paying attention. The other part of it is that when Leslie Vial did her assessment that assessment met all of the criteria under 3030 as well as 20 U.S.C. 1414. Was it valid when it was administered? She definitively answered yes. That's all heard down there right? That's right. And if someone resolves it, it's like when a jury hears two sides of it and they, you know, I was at home baking cookies or you were at the robbery or you were at jack in the box at the window doing the robbery and they hear both of it but they decide I was at jack in the box doing the robbery. It's, they resolve against you on certain things. So the court, I mean the fact finder heard all of that and decided that the WISC was the most reliable one. But why did Leslie Vial look to the WISC? Because she said she felt that her scores were inflated and she read in a book somewhere that her scores might be inflated and none of the testing that she did to corroborate that feeling supported her. Okay. Do you want to save some time? I'd like to save the three minutes. Okay. Well, you get $244. Thank you. Thanks. Good morning. Good morning. May it please the court, my name is Kimberly Walsh.   plaintiff and I was interviewed. The school district has never ever taken the position that disabilities can only be placed in one category. We just feel that We went along with it down below when the court saw it that way. Well, saw what way? I mean, there was never a determination. Well, the court said it can't be both. Well, that was the decision that plaintiff appealed. Right. I don't think you fought that too much right there. I would just say the written decision we got wasn't necessarily what we argued in our briefs. If we were to argue    only be placed in one category, then you lose in this case. They're just saying this is how the statute is. Is that fine with you? It is fine with me to say that certain disabilities can be found to fit into various categories. We know that from ADHD. It can fit under specific learning disability, under other health impairment and even emotional disturbance depending on how it manifests itself. But what we did argue in the remand which was really the first time that we had the chance to argue this issue is that a central auditory processing disorder is not a health condition. It really doesn't affect the strength, vitality, and alertness of the student. All right. But they're saying it is. That's the part I want to argue against. All right. But they're the Department of Education. They're over you. That's their job. It's not their job to run your school district or any. It's their job. I'm confused about this. When did the Department of Education come in with this interpretation? I believe on this appeal. This EMQ appeal. So the Department   with this interpretation. And I believe that the District Court erred in not giving deference to something that wasn't there. Right. And that's the thing. We have no case law out there that has ever decided that a central auditory processing disorder qualifies as an auditory  disorder. Why should we, but now that we have to interpret this statute and the Department of Education is interpreting it, why should we accept your interpretation over someone that's not involved in the middle of litigation and they're interpreting it for everyone. It doesn't mean you lose on this case. It just means that's what the statute means going forward. Well, what I'm taking issue with though is there's no  the U.S. Government to say that specifically an auditory processing disorder qualifies as an auditory processing disorder. Except that they're the Government and they're in charge of   processing disorder. There was no evidence in the record that that was the case. Well, counsel, I would say almost self-evidently to the extent I understand what this auditory processing disorder is, it certainly can affect a student's alertness. If they're not able to process information in a traditional way, they're probably not as attentive, as alert to what's going on in the classroom as students who do not suffer from that disability. That doesn't seem like a stretch at all. Well, I don't see it the way that you're seeing it.  that there's a comparison between health conditions and processing disorders. A health condition like ADHD you can treat with medication. There's scores of cases out there where the person didn't qualify for special education because they got their  wrong. The reason that the auditory processing disorder goes more to the specific learning disability and this was Congress's intent because we have the defect in psychological process. Part of the definition is that you can be sitting there, you can get that but then the auditory processing disorder is a problem and you can't treat it like you should. And I don't see that comparison going anymore. I don't see that   the auditory processing disorder and the processing disorder not able to access their education. It doesn't say whether you have an auditory processing disorder you get services under the OHI. It says you but it can be analyzed under it. Well I think that does open a wide door that everything that you're looking at every other category should be considered under other health impairment. Going away from that theoretical back to our original assessment. So as you're concerned you're going to have to give services to too many people? Well I think there's a concern that saying and I'm not sure that this is what the government is saying but that if you say you have a medical diagnosis of auditory processing disorder you automatically qualify. They didn't say that. That's what I'm saying. You still need to go through the strength alertness investigation. I'm just saying there's no cases that have ever found that to be the case. In my practical practice there are no cases that we have ever   be the case. You've got to be sure I understand your position because I think I may be a little confused. I gather you say you do not necessarily disagree with the department when they say these various categories are not mutually exclusive. But I gather you're saying that that's not true of a central auditory processing disorder. You feel that could not be given the nature of how an OHI is defined. It could not qualify no matter what as another health impairment. Is that your position? That's my position. And I haven't seen any evidence in this case either with this particular student. I don't know where you're entitled to Chevron deference as an advocate in the Department of Education that's charged with administering the statute. They're in a different position than you are. I still think we need to look at the statute  see if it's true. Do you understand the Department's position to be that this particular disorder has to be evaluated under both or that the two statutes or the two categories are not necessarily mutually exclusive? I hear them saying it's not mutually exclusive or   exclusive. You can't look at the statute and say yes, you are yahoo this this is this is this is this is this is this what is this is this is this this is you the yes the the the yes the the  the the the yes the the describing describing describing descent describing descent on on the on  the the the the  des much 더 더 더 더 더 the the the the the the the the the now the the the the the the th
judges: Schroeder, Lipez, Callahan